IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | | |
|---|---|---|
| CHRISTOPHER HARRISON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CV 314-026 |
| | ) | |
| WILLIAM DANFORTH, Warden, | ) | |
| Telfair State Prison, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, an inmate at Ware State Prison in Waycross, Georgia, brought the above-captioned case pursuant to 42 U.S.C. § 1983, concerning events that allegedly took place at Telfair State Prison in Helena, Georgia. Plaintiff is proceeding *pro se* and *in forma pauperis* ("IFP"). The matter is before the Court on Defendants' pre-answer motion to dismiss. (Doc. no. 11.) Plaintiff did not file a response to the motion, and it is therefore deemed to be unopposed. Loc. R. 7.5. For the reasons set forth below, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** (doc. no. 11) and that this case be **DISMISSED** and **CLOSED**. Additionally, the **CLERK** is **DIRECTED** to modify the docket to reflect that Defendant Zanders's first name is "Sam." (See doc. no. 11.)

**I.    BACKGROUND**

In his complaint, Plaintiff names as Defendants William Danforth, the Warden at Telfair State Prison, and Sam Zanders, the Deputy Warden at Telfair State Prison, and alleges the

following facts. (Doc. no. 1, p. 1, 4.) On December 15, 2012, while incarcerated at Telfair State Prison, Plaintiff told Defendants that "other prisoners gave threats against [his] life" because he was Muslim and requested that Defendants place him in protective custody. (Id. at 5.) Defendants told him there was nothing they could do. (Id.) Later that day, the same prisoners who threatened Plaintiff attacked and stabbed him. (Id.) Due to his injuries, he can no longer hear well, walks with a permanent limp, and has serious leg and shoulder pain and discomfort. (Id.)

Plaintiff was transferred to Valdosta State Prison on January 9, 2013. (Doc. no. 11-1, p. 5.) Plaintiff did not file a grievance concerning the alleged assault for more than ten months. (Id.) On November 12, 2013, Plaintiff filed formal grievance number 161541, and on December 26, 2013, Plaintiff filed formal grievance number 164335, both of which referenced the alleged assault. (Doc. no. 11-2, pp. 38, 43, 47.) Defendants have produced the affidavit of Deondrick Clemons, the Grievance Coordinator at Telfair State Prison, who states that the grievances were forwarded to Telfair State Prison because the alleged events occurred there. (Clemons Aff., ¶ 15.) Each grievance was rejected for being filed out of time. (Doc. no. 11-2, pp. 40-42, 45-46.) Plaintiff gave no reason for filing the grievances out of time. (Id. at 43, 47.) Plaintiff took no further action with respect to these grievances. (See id. at 38; Clemons Aff., ¶ 15.)

## II.   DISCUSSION

### A. Defendants' Motion to Dismiss Should Be Granted Because Plaintiff Failed to Exhaust His Administrative Remedies.

#### 1.   The Legal Framework

The Eleventh Circuit has created a two-step analysis for motions to dismiss based on failure to exhaust administrative remedies. First, the court looks to the factual allegations made by

2

both parties, taking Plaintiff's version as true where they conflict, and if in that light the complaint is subject to dismissal for failure to exhaust, Defendants' motion will be granted. Turner v. Burnside, 541 F.3d 1077, 1082-83 (11th Cir. 2008) (citing Bryant v. Rich, 530 F.3d 1368, 1373-74 (11th Cir. 2008) (citations omitted), *cert. denied*, 555 U.S. 1074 (2008)). If the complaint is not subject to dismissal at the first step, then at step two the court makes specific findings to resolve the disputed factual issues, with Defendants bearing the burden of proving that Plaintiff has failed to exhaust. Id. Based on its findings as to the disputed factual issues, the court determines whether the prisoner has exhausted his available administrative remedies and thus whether the motion to dismiss should be granted. Id. Because exhaustion "is treated as a matter of abatement and not an adjudication on the merits, it is proper for a judge to consider facts outside the pleadings and to resolve factual disputes so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record." Bryant, 530 F.3d at 1376 (citations omitted).

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The PLRA's mandatory exhaustion requirement "applies to all prisoners seeking redress for prison circumstances or occurrences." Porter v. Nussle, 534 U.S. 516, 520 (2002). Moreover, the Court does not have discretion to waive the requirement, even if it can be shown that the grievance process is futile or inadequate. See Smith v. Terry, 491 F. App'x 81, 83 (11th Cir. 2012); Alexander v. Hawk, 159 F.3d 1321, 1325 (11th Cir. 1998).

Furthermore, the PLRA also "requires proper exhaustion." Woodford v. Ngo, 548 U.S. 81, 93 (2006). In order to properly exhaust his claims, a prisoner must "us[e] all steps" in the administrative process; he must also comply with any administrative "deadlines and other critical procedural rules" along the way. Id. at 90 (internal quotation omitted). If a prisoner fails to complete the administrative process or falls short of compliance with procedural rules governing prisoner grievances, he procedurally defaults his claims. Johnson v. Meadows, 418 F.3d 1152, 1159 (11th Cir. 2005).

Also, because exhaustion of administrative remedies is a "precondition" to filing an action in federal court, the Eleventh Circuit requires prisoners to complete the administrative process *before* initiating suit. Poole v. Rich, 312 F. App'x 165, 166 (11th Cir. 2008); see also Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000). Finally, under the PLRA, the Court has no discretion to inquire into whether administrative remedies are "plain, speedy, [or] effective." Porter, 534 U.S. at 524; see also Alexander, 159 F.3d at 1326. Rather, under the PLRA's "strict exhaustion" requirement, administrative remedies are deemed "available" whenever "'there is the possibility of at least some kind of relief.'" Johnson, 418 F.3d at 1155, 1156.

### 2. The Administrative Grievance Procedure

Because the date of the alleged incident is December 15, 2012, the administrative grievance procedure applicable in this case is governed by the version of the Georgia Department of Corrections' Standard Operating Procedure ("SOP") IIB05-0001 that became effective on December 10, 2012. (See doc. no. 11-2, pp. 6-31.) Inmates are encouraged to resolve complaints on an informal basis before filing a grievance, however this step is not required. SOP IIB05-0001 § VI(A)(4). The administrative remedies procedure commences with the filing of

the Original Grievance. An inmate may file a grievance "about any condition, policy, procedure, or action or lack thereof that affects the offender personally." SOP IIB05-0001 § VI(B)(1). The inmate has ten calendar days from "the date the offender knew, or should have known, of the facts giving rise to the grievance" to file the Original Grievance and give it to a Counselor. SOP IIB05-0001 § VI(D)(1)-(5). Once the Counselor gives the grievances to the Grievance Coordinator, they will screen it in order to determine whether to accept it or recommend that the Warden reject it. SOP IIB05-0001 § VI(D)(5). If the Warden rejects the grievance, the inmate may appeal the rejection to the Central Office. SOP IIB05-0001 § VI(D)(5)(f).

If the Grievance Coordinator accepts the grievance or the Warden rejects the coordinator's recommendation, the Grievance Coordinator will appoint a staff member to investigate the complaint. SOP IIB05-0001 § VI(D)(6). After the staff member prepares a report, the Grievance Coordinator submits a recommended response to the Warden. Id. The Warden or their designee reviews the grievance, the report, and the recommendation and issues a decision in writing. Id. The Warden has forty days from the date the offender gave the Original Grievance to the Counselor to deliver a decision. SOP IIB05-0001 § VI(D)(7). The inmate then has seven calendar days from the date they receive the response to file a Central Office Appeal to the Office of the Commissioner; the Office of the Commissioner or his designee then has 100 calendar days after receipt of the grievance appeal to respond. SOP IIB05-0001 § VI(E). The grievance procedure is terminated upon the issuance of a response from the Commissioner's Office. See id.

### 3. Plaintiff's Failure to Exhaust

Here, Plaintiff's claim should be dismissed because Defendants have produced copies of formal grievance numbers 161541 and 164335, which show that Plaintiff filed them more than

5

ten months after the ten-day deadline had passed, and that prison officials thus rejected both as untimely. (See doc. no. 11-2, pp. 40-47.) Because Plaintiff's grievances failed to comply with the administrative deadline, they do not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90.

Although Plaintiff did not respond to Defendants' motion to dismiss, he alleges in his complaint that he "requested grievances at Telfair State Prison while confined in segregation but nobody [sic] counselor or officer would give me one," and "filed grievance as soon as [he] was transferred to another prison." (Doc. no. 1, p. 3.) As explained below, after carefully comparing these assertions by Plaintiff with the countervailing evidence submitted by Defendants, the Court finds that the administrative grievance process at Telfair State Prison was available to Plaintiff but he failed to utilize it.

Plaintiff vaguely alleges that he requested grievance forms while in segregation at Telfair State Prison and that "nobody [sic] counselor or officer would give me one." (Id.) He does not identify any prison official who refused his requests, nor does he provide any other details such as the dates of his requests. (See id.) Plaintiff submits no documentary proof of his requests for grievance forms, and tellingly he never made the accusation that officials denied his requests until he filed the complaint in this action, in response to questions on the complaint form concerning exhaustion. In fact, Plaintiff made no mention of the accusation in the two grievances he filed ten months after his transfer to Valdosta State Prison, i.e., formal grievance numbers 161541 and 164335. (Doc. no. 11-2, pp. 38, 43, 47.)

Casting further doubt on Plaintiff's assertion is the affidavit testimony of Mr. Clemons that grievance forms are available to all inmates in Telfair State Prison at all times, including the specific unit that housed Plaintiff after the incident and during the period of his stay from

December 15, 2012 through January 9, 2013. (See doc. no. 11-2, ¶¶ 11-12; doc. no. 27-2, ¶ 5.) Moreover, it is undisputed that Plaintiff did not bother to file a grievance until more than ten months after his transfer to Valdosta State Prison. (Doc. no. 11-1, p. 5; doc. no. 11-2, p. 38.) And while Plaintiff had the opportunity to appeal the rejection of both grievances, he failed to do so.

The Court finds that the grievance process at Telfair State Prison was available to Plaintiff, prison officials at Telfair State Prison did not refuse Plaintiff's requests for a grievance form, and the grievances Plaintiff filed ten months after his transfer to Valdosta State Prison were untimely and did not satisfy the exhaustion requirement. Woodford, 548 U.S. at 90; Johnson, 418 F.3d at 1159. Therefore, Plaintiff's claim is procedurally defaulted and Defendants' motion to dismiss should be granted. Johnson, 418 F.3d at 1159.

### III. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that Defendants' motion to dismiss be **GRANTED** (doc. no. 11) and that this case be **DISMISSED** and **CLOSED**.

SO REPORTED and RECOMMENDED this 9th day of February, 2015, at Augusta, Georgia.

_____
BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA